## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **DORY PARKER,** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | |
| v. | § | Civil Action _____ |
| | § | |
| | § | |
| | § | |
| **CITY OF PORT ARTHUR, TX,** | § | |
| **ET AL,** | § | |
| **Defendants** | § | **TRIAL BY JURY** |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Dory Parker (hereafter "Plaintiff" or "Parker") files this Original Complaint against the City of Port Arthur (hereafter "Defendant 1" or "City"), Danny Thibodeaux (hereafter "Defendant 2 " or "Thibodeaux") and would show the Court as follows:"

### Parties

1. Plaintiff is an individual who resides in Jefferson County, Texas.
2. Defendant1 is a municipality located in Jefferson County, Texas.
3. Defendant2 is an individual employed by the City as Superintendent of Waste Water.

## Jurisdiction and Venue

4. This Court has jurisdiction, pursuant to Title 28 USC §§ 1331, 1343.

5. Venue is proper in the Eastern District of Texas, Beaumont Division, Texas.

6. Venue is proper in this district under 42 U.S.C. §2000e-5(f)(3) because the alleged unlawful employment practice was committed in this district, because the employment records relevant to the alleged unlawful employment practice are maintained and administered in this district, and because defendant has its principal office in this district.

## Service

7. Defendant 1, City may be served with process herein by serving the Complaint on the City Secretary *and* City Manager, at 444 4th Street, Port Arthur, Texas 77640.

8. Defendant 2, Thibodeaux may be served with process herein at his place of business, the City's Waste Water facility at 6300 Proctor St. Extension, Port Arthur, Tx. 77642.

## Exhaustion of Administrative Procedures

9.  Plaintiff timely filed a charge of discrimination, 460-2022-02788 against defendant with the Equal Employment Opportunity Commission (EEOC).  Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC on or about

May 09, 2022.  A copy of the Charge of Discrimination (Exhibit A) and EEOC notice of right to sue (Exhibit B) are attached hereto and incorporated by refence herein.

### Count 1 - Discrimination Under Title VII

10.   Plaintiff was an employee within the meaning of Title VII and belongs to a class protected under the statute, namely African American, male.

11.  City is an employer within the meaning of Title VII.

12. Plaintiff Dory Parker is a straight-laced, honest, sober, married man who was hired by the City on January 21, 2019.

13. Plaintiff was terminated by the City on September 18, 2021.

14. During his employment with the City, Plaintiff's job title was "Treatment Plant Operator Trainee" who was trained by other workers.

15. Plaintiff's education is enrolled at Lamar Institute of Technology, studying to be a process operator, attending school part-time.

16. Plaintiff's work history includes his working at area refineries since he was 18 years of age.

17. Plaintiff appealed his termination on September 19, 2021 according to the policies of the City of Port Arthur, filling out his appeal letter on October 19, 2021, and was notified his appeal hearing was scheduled for October 29, 2021, via zoom at 9:30 am.

17. T. Williams, Director of Human Resource told Plaintiff if he appealed his firing, then he would not be qualified for unemployment benefits during the process.

18. The key figures in this matter are Danny Thibodeaux – Superintendent (White) ("Danny"), Joseph Tesler-Supervisor (White)("Joseph"), T. Williams-Human Resources (Black), Jaquail Miller ("Miller") – Equipment operator (Black).

19.   What happened is as follows:

   a.    Parker was sent to the City's Port Acres "water treatment plant" on August 18, 2021, by a verbal face to face directive from Danny and Joseph.

   b.    Parker was instructed to assist the operator and clean the clarifier.

   c.    Initially Parker was instructed to run trucks but since he's already there to also, to assist the operator.

      1) Upon arrival at the Port Acres plant, Parker observed an employee (later identified as Larry Alfred)sitting in the chlorine building, smoking.

2) Parker approached the employee to ask him what to do with the clarifier and said to him this is his first time doing this assignment and he did not know exactly what to do in details.

3) The employee, Larry Alfred (White) stated to Parker, "he doesn't know what [I] was sent to do with the clarifier since that had already been done".

4) Parker replied he would call Danny and Joseph Tessler ( White) to find out what else he might do, since the clarifier had been cleaned, and the trucks would be attended.

5) To be sure that he was accurate in his report about the clarifier having been cleaned, Parker personally examined the clarifier, saw that it was clean, and was satisfied it had been cleaned.

20. *Two weeks later* Danny told Parker he receiving a disciplinary write-up, being disciplined because the job he was sent to do- cleaning the clarifier-had not been completed.

21. Parker responded that he was sent to clean the clarifier and it had already been cleaned when he arrived at the Port Acres plant according to Larry Alfred, and according to his own personal inspection of the clarifier.

22. Danny said Larry reported he hadn't talked to Parker at all when Parker had been at the facility.

23. Parker replied that was untrue, described where Alfred was located, what he had said and what he, Parker had done to insure that Alfred was accurate when he said that the clarified had already be cleaned; Parker then asked for the real reason Thibodeaux was giving Parker the disciplinary write-up, if the job had already been done, and *Danny hadn't even asked Parker about the job, whether it was done or not in the first place.*

24. Parker then directly asked Danny for the basis of the disciplinary write-up, and why he had not asked Parker about the job and whether it had been done or not done-- in the first place, instead of waiting for two weeks.

25. Danny replied he had just received statements from Joseph Tessler and Larry Alfred.

26. Parker asked Danny again why he had not asked Parker about the clarifier assignment before he, Thibodeaux started making charges, and gathering statements against Parker...why had no one asked Parker what he had done, if he had followed instructions, gone to the Port Acres plant, spoken with Larry Alfred, and personally verified that the clarifier had indeed been cleaned?

27. Parker asked Danny why no one, specifically Danny had not asked him his side of the story before accusing him (Parker)?

28.  Parker told Danny he felt he was being retaliated against because he was going scheduled to be a witness *in someone else's hearing*, Jaquail Miller's (Black) grievance hearing against Thibodaeux for his false and unfair disciplinary write ups of Miller.

29.  Danny Thibodeaux than handed the disciplinary paper to Parker and told him to sign it, but Parker refused to sign Thibodeaux's disciplinary write up because he didn't trust how Thibodeaux would describe hie signature.

30.  Danny then said, while he was at it, he wanted to show Parker a photo he had of Parker *sleeping on the job*, and pulled out a picture of Parker when he had been [on a break and leaning back in his chair] with his eyes closed.

31.  Danny then said to Parker, and said, "Tell me you were not sleeping".

32.  The photo had been supposedly taken June 9, 2021, according to another write up Danny's write-up of Parker for sleeping on the job.

33.  Parker examined the photo and recognized it had been taken during a break time, some-time in April or May, 2021.

34.  Parker remembered that when the photographed incident had occurred, Thibodeaux had called Parker to ask what happened, and Parker told him he was falling asleep while on break, but he was

not sleeping; Thibodeaux responded, "I am looking at you on the camera and I see you sleeping."

35. However, the camera Danny had been viewing when he accused Parker of sleeping on the job, was located behind Mr. Parker and displaying only the top of Parker's head.

36. Thibodeaux was passing the photo as having been made a time when it wasn't made, and making up facts that Parker had been seen and reprimanded for sleeping on the job.

37. Parker realized that Thibodeaux was falsely representing the facts.

38. Thibodeaux produced a second writeup against Parker who refused to sign that one as well.

39. Once Parker left Thibodeaux's office, Parker immediately called Human Resources ("HR") and reported that Thibodeaux was making up facts to support false discipline write ups against him, because he was to be a witness for Miller in his grievance.

40. "Ms. Shanetra", the HR employee with whom Parker spoke said she would "call [her] boss, Ms. Trameka, head of H.R. and they would call [Thibodeaux] and get more information."

41. For two weeks Mr. Parker made several attempts to contact HR, but no one returned his call.

42. Parker worked for two full weeks without any issues with Thibodeaux or Tessler, who usually worked together as a hostile against their direct reports.

## Count 1 – Discriminatory Employment Practices and Retaliation

43. On August 2, 2021, Miller's hearing against Thibodeaux occurred and Parker testified as a witness for Miller; on September 9, 2021, Thibodeaux summoned Parker to Thibodeaux's office.

44. Upon Parker's arrival Thibodeaux and his boss, Mr. Clyde Trahan (Black) were present.

45. Parker was handed a letter of termination, and Parker stated he would talk to HR regarding this matter, and walked out of the office.

46. Parker went to H.R. office and stated he had made numerous attempts to contact HR, and no one had called him back.

47. Trameka stated Parker should speak with the City Manager and gave Parker his number to make an appointment with him to sit and talk about the matter.

48. Parker made numerous attempts to contact the City manager but he never spoke with him.

49. Parker had been a witness for Jaquail Miller who had prevailed on his three write ups and 3 day suspension by Thibodeaux.

50. The closeness in time between Parker's testifying for Miller AND Parker's being fired that clearly establishes that the cause of Parker's termination was his testimony in support of Miller against Thibodeaux for discriminatory employment practices.

### Count 2 – Unconstitutional Deprivation of Due Process (Substantive and Procedural) and Retaliation for Exercise of Free Speech on a matter of Public Concern Employment Discrimination in the Workplace, and as a Citizen, or Unpaid Speech.

51. The City is an agency acting under color of state law, and has violated Plaintiff's Constitutional rights by the implementation of unconstitutional policies or widespread practices, or implemented neutral policies in an unconstitutional manner, or ratified the unconstitutional acts of non-policymakers.

52. Parker had a reasonable, objective belief upon which he relied that the City would follow its policies and enforce compliance with them by Trahan, Thibodeaux, Tessler, and Alfred.

53. An agency is required to follow its own policies and not act ultra vires.

54.  An agency of government is required to comply with state law and not act ultra vires, without explanation while depriving a public employee of a tangible interest, and to do so is arbitrary and capricious and in violation of the Fourteenth Amendment.

55.  The City failed to follow its own policies, as well as state and federal law, without explanation and has deprived Plaintiff Walker of a tangible interest therefore violating her of substantive due process.

57.  The City has deprived Plaintiff Parker of protected interests without procedural due process, and coerced him into foregoing a name clearing hearing, and denied him the appearance of justice even when it was clear that speaking in support of the truthful facts for Miller resulted in Parker's termination.

58. Plaintiff exercised free speech in testimony for Miller and conversations with co-workers and or supervisors by criticizing employment discrimination by the City through Thibodeaux and Tessler .

59.  Plaintiff was neither authorized nor paid by the City to regulate or speak and the hearing in support of Miller.

60. Plaintiff has otherwise exercised free speech being both protected matters of public concern and as a "citizen".

## Request for Jury Trial

61. Plaintiff prays for trial by jury.

## Damages and Prayer

62.    At trial and based on a verdict where the law prohibits the favoring of persons because of the power and political strength, Plaintiff seeks  a judgment awarding to him damages to restore him to his compensatory damages for non-duplicative, alternative theories of recovery; and

 63. Plaintiff seeks declaratory and injunctive relief, whereby the City would be declared to have deprived Plaintiff of rights, privileges, and immunities in violation of statutes and Constitution, and Plaintiff would be afforded mandatory reinstatement, and the City would be enjoined from further violation of Plaintiff's Constitutional and or statutory rights; and

64. Plaintiff seeks reimbursement of costs and attorney's fees; and

65. Plaintiff seeks all other relief to which he may show himself entitled.

>Respectfully Submitted,
>
>WATTS & COMPANY, LAWYERS, Ltd.
>
> **/S/Π_Larry Watts**
>
>Larry Watts
>TBN 20981000

H:\Melissa March 11  2020 backup\23 TICKLER Parker, Dory\Pleadings\2022-08-09. Dory Parker POC .docx

P.O. Box 2214
Missouri City, Texas 77459
Ph. (281) 306-6801
Cell (281) 431-1500
Fax (877) 797-4055
Wattstrial@gmail.com